[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action for dissolution of marriage and other relief brought to the Judicial District of New Haven. Many of the facts that give rise to this action are not in dispute. The plaintiff whose maiden name is Tara Vasques, and the defendant, were married on November 21, 1992 in Guilford, Connecticut. The plaintiff has resided continuously in the State of Connecticut for at least twelve months immediately prior to the date the complaint was filed. The marriage between the parties has broken down irretrievably without any reasonable prospects of reconciliation. There are two minor children issue of this marriage: David Alter, born May 11, 1994; and Benjamin Alter, born June 7, 1996. No other minor children have been born to the plaintiff wife since the date of marriage of the parties. Neither party has received state assistance.
The parties are in dispute as to the cause of the breakdown of the marriage. From the evidence presented, the court finds that each party is equally at fault for the breakdown.
The plaintiff was born on September 29, 1968. She met the defendant in September, 1986 when she was eighteen years old and had started college in Danbury. They met at an animal hospital where he was a veterinarian and she was a helper. He was thirty years old at the time. They commenced residing together by January of 1987, when she moved in with him in Waterbury while continuing her college studies. The plaintiff graduated college in June of 1991, and commenced full-time employment at St. Raphael's Hospital where she continues to be employed as a registered nurse. Her current working hours are from 11:00 p. m. to 7:00 a.m. She changed her previous shift in October, 1998 to her current hours in the belief that it would help her in her claim for sole custody of the children.
The parties are in dispute as to the plaintiff's current average gross weekly income and net weekly income. For the period of January 1, 1998 through December 26, 1998, the gross FIT taxable income earned by the plaintiff was $48,561.16 for a gross weekly average of approximately $934.00. For the period of January 1, 1999 through May 29, 1999 (21 2/7 weeks) her gross income was $18,678.36. That amounts to a gross weekly average of approximately $877. For the purpose of financial orders, the court finds that the plaintiff's present gross weekly income from her employment is $877. Included in this amount is overtime from January 1, 1999 through May 29, 1999 of $486.03, and a shift premium of $1315.06. She also receives what is referred to as flex dollars, which for the period of January 1, 1999 through May 29, 1999 amounted to $567.38, and is not included in her gross income for income tax purposes. Flex dollars is the amount that the employer pays towards medical benefits for the employee. The plaintiff is presently in counseling and attends twice a month at a cost of $37.50 per visit. The parties owe a bill to Temple Beth Tikvah in Madison, Connecticut, with a balance due of between $1000 and $1500. The plaintiff owns a 1990 Geo Prism that she purchase in approximately April of 1999 for $3600. It has a present value of $3600 and a loan balance of $3600 and no equity. The plaintiff has a deferred compensation plan through Fidelity with a present value of $7600. The plaintiff has liabilities totaling $23,685. Those liabilities consist of an American Express Optima Card with a balance of $249; a Citibank credit card with a balance of $8187; a MBNA with a balance of $5749; a loan from her father with a balance of $1000; attorney's fees with a balance of $5000 as of June 18, 1999; and a debt to her mother with a balance of $3500. The Citibank credit card, shown on the plaintiff's financial affidavit with a balance of $8187, is the same credit card that the defendant shows on his financial affidavit as Citibank Advantage with a balance of $3000. The plaintiff's financial affidavit dated June 18, 1999 shows a $145 weekly expense for food. That correct amount should be $100. Her CT Page 11713 affidavit also shows a weekly transportation expense for gas and oil $40. That correct amount should be $30. The plaintiff had incurred credit card debts of $28,000 to $30,000 approximately 2 years ago. The defendant told her that if she stopped using those credit cards that he would pay off those debts. Those debts were subsequently paid off in full by the defendant. The defendant is responsible for some of the plaintiff's current credit card charges for many of the purchases for the minor children.
The first family home was purchased by the parties in North Branford, Connecticut in 1990 for a purchase price of between $150,000 and $160,000. The plaintiff was still attending college at Southern Connecticut State University at the time of the purchase. Her college expenses were being paid by her parents. The present family home located at 1130 West Lake Avenue, Guilford, Connecticut was purchased in April 1992 for $182,500. It was financed in part with a first mortgage in the amount of $164,250, with a balance of $21,937.81 paid by the defendant including settlement charges. The family home was purchased approximately seven months before the parties married. The defendant vacated that residence in February of 1998 when the plaintiff was granted exclusive possession. The court finds that the fair market value of the family home is $230,000. It has a mortgage of $150,000 and an equity of $80,000. The defendant did not contribute any money towards the purchase of the family home located at 1130 West Lake Avenue, Guilford, Connecticut. Both the plaintiff and the defendant signed the promissory note and mortgage deed regarding the family home. The monthly payment on the mortgage is $1,492.
In December of 1987 the parties left the defendant's Waterbury residence and moved to Guilford, Connecticut, where the defendant found and a veterinary practice to purchase. He purchased both the animal hospital practice as well as the real estate where the hospital was located. The purchase was completed during the plaintiff's January, 1998 college semester. The plaintiff then transferred from Western Connecticut State University in Danbury to Southern Connecticut State University in September of 1988.
The defendant agreed with that transfer.
The parties are in dispute as to the amount of time that the plaintiff was devoting to the defendants animal hospital practice. The plaintiff was paid for the time that she worked at CT Page 11714 the defendant's veterinary practice. During 1998 she was paid a total of $5328. During 1989, she was paid a total of $11,634. During 1990, she was paid a total of $7596. During 1991, she was paid a total of $3979. It was during the calendar year of 1991 that the plaintiff became a registered nurse and was employed full-time at St. Raphael's Hospital. During 1988, 1989 and 1990, the plaintiff was a full-time student at Southern Connecticut. She graduated from Southern Connecticut in 1991. The plaintiff did not contribute any money towards the purchase by the defendant of Pet's Friend Animal Hospital located in Guilford, Connecticut, or the real estate and building where it's located at 2477 Boston Post Road, Guilford, Connecticut. The cost of the land and building where the defendant's veterinary practice is located was $250,000. The cost to purchase the veterinary practice and good will was $75,000. The cost to purchase the equipment was $19,000. The purchase was financed in part with a first mortgage from Omnibank of Connecticut, Inc. in the amount of $250,000. He also received a loan from the seller of the practice to finance the purchase of the veterinary practice and good will in the amount of $75,000, with a balance of the purchase price coming from a loan from his father and his own funds. The monthly payment on the mortgage is $2900. The balance of the mortgage is approximately $253,000. The court finds that the fair market value of the property is $330,000 and the equity in the property is $77,000.
The defendant was born on November 5, 1955. The defendant graduated from the University of Missouri Veterinary School in 1986. He moved to Connecticut in 1986 after graduation from veterinary school. He received his veterinary license for the State of Connecticut in early 1986.
The parties owned a 1997 Hunter 42 foot passenger sail boat. The court finds that its total value is approximately $175,000. There is a loan due on that boat to Key Bank with a balance of approximately $175,000. Both the plaintiff and the defendant co-signed the loan on the boat. The boat has been for sale since September of 1998. There is no equity in the boat. The Defendant's financial affidavit lists a Citibank debt with a balance of $3000. That is the same debt listed on the plaintiff's financial affidavit with a balance of $8187. The balance shown on the plaintiff's financial affidavit is the correct balance. The parties are in dispute as to the present income of the defendant. The court finds that in the calendar year 1995, the gross business income was $296,300. In the calendar year 1996, the CT Page 11715 gross business income was $303,211. In the calendar year 1997, the gross business income was $359,032. In the calendar year 1998, the gross business income was approximately $340,000. For the period January 1, 1998 through November, 1998, the gross income from the business was $326,400. In addition to income from the veterinary practice, the defendant receives $485 monthly income for rental from a groomer and $650 monthly income for apartment rental where his veterinary practice is located. The court finds that the defendant's gross weekly income at the present is $1538.46 as shown on his financial affidavit dated June 9, 1999. The parties are also in dispute as to the fair market value of the defendant's veterinary practice. From the evidence presented, the court finds that the fair market value of the defendant's veterinary practice is $115,000. The defendant currently rents property that he occupies as a residence. His monthly rent is $1200. Defendant owns a 1999 Mercury. It has a fair market value of $21,000 and a loan balance of $26,000. The weekly payment on the loan is $128. He also owns a 1998 Ford with a value of $30,000 and a loan balance of $41,000. The $1020 monthly payment on that loan is paid for by the business. The cost for COBRA benefits for the defendant under the plaintiff's health plan at St. Raphael's Hospital is $256 monthly for medical and dental. That cost can increase each year. A private plan would cost him $230 monthly and would not provide coverage as good as is available under the plaintiff's plan.
The defendant has liabilities totaling $21,500 consisting of Fleet Bank with a balance due of $800 for charges that he made on the plaintiff's account; Citibank/VISA with a balance of $1700; Citibank with a balance of $4000; Citibank/Advantage with a balance of $3000 for charges he made on the plaintiff's account; and MBNA with a balance of $12,000. The defendant also has a Citizen Bank business checking account that has a fluctuating balance with a balance shown on his financial affidavit of June 9, 1999 in the amount of $5000.
The court finds that for child support guideline purposes, the gross weekly income of the plaintiff is $877 and her net income is $645. The court finds that the defendant's gross weekly income is $1538 and his net weekly income is $1051. The combined net weekly income is $1700, and the basic child support obligation is $438. There is a child's health insurance premium of $42. The total current support obligation is therefore $480. The plaintiff's share is 38 percent or $182, and the defendant's share is 62 percent or $298. The plaintiff's share of $182 is CT Page 11716 reduced by the health insurance premium adjustment of $42 for a net presumed current support amount for the plaintiff of $140 and a recommended current support order for the defendant of $298. In addition, the court finds that the defendant's share of unreimbursed medical expense as well as child care contribution is 45 percent and the plaintiff's share is 55 percent.
This court has considered the provisions of § 46b-82
regarding the issue of alimony, and has considered the provisions of § 46b-81 (c) regarding the issue of property orders, and has considered the provisions of § 46b-84 and the Child Support Guidelines regarding the support, and has considered the provisions of §§ 46b-56a and 46b-56b and 46b-56 (b) regarding the issue of custody and joint custody, and has considered the provision of § 46b-62 regarding the issue of attorney's fees. The court enters the following orders:
 ORDERS
A. BY WAY OF DISSOLUTION OF MARRIAGE
1. The marriage between the parties is dissolved and each party is declared to be single and unmarried.
B. BY WAY OF ALIMONY
1. No alimony is awarded in favor of either party.
C. BY WAY OF CUSTODY AND VISITATION
1. The court enters an order of shared custody of the two children. The children are to be with the defendant father each Tuesday from 12:15 p. m. until Thursday at 12:00 noon, and alternating weekends from Friday at 5:30 p. m until Monday morning at 9:00 a.m. Except as hereinafter ordered, the children will be with the plaintiff the remaining time.
2. Holidays shall be alternated annually and shall supercede any regularly scheduled time with the children. The following is the holiday schedule:
(a) Thanksgiving 1999 with the plaintiff mother;
(b) the first night of Hanukkah 1999 with the defendant father; CT Page 11717
 (c) Christmas Day 1999 from 10:00 a.m. to 8:00 p. m. with the defendant father;
(d) Passover 2000 with the defendant father;
3. Mother's Day with the plaintiff mother (if it is not her weekend, she shall have the children from 10:00 a.m. until Monday morning); and Father's Day with the defendant father (if it is not his weekend, he shall have the children from 10:00 a.m. until Monday morning at 9:00 a.m.).
4. Each parent shall have one exclusive week of vacation. Vacation times will be arranged at least sixty days in writing in advance.
D. BY WAY OF SUPPORT
1. The defendant is ordered to pay to the plaintiff support in the amount of $298 weekly. In addition, he is to pay 45 percent of the unreimbursed medical expenses and child care contribution.
2. The plaintiff is to pay the first $100 annually of all unreimbursed medical expenses commencing January 1, 2000 for each of the two minor children. For the remainder of the calendar year 1999, she is to pay the first $33 of unreimbursed medical expenses for each child.
3. The plaintiff is to provide the health insurance for each of the two children as is available through her place of employment.
4. The defendant has the right to claim both minor children as exemptions for federal and state income tax purposes for each calendar year in which he is current in his support obligations at the end of such calendar year.
5. The defendant is to name the two minor children as beneficiaries under his First Colony Life Insurance policy for the sum of $200,000 of the total face amount of $275,000. The $200,000 may be reduced by $15,000 annually commencing September 1, 2000 and annually thereafter on September 1. The obligation of the defendant to maintain such life insurance terminates when each child reaches age eighteen. The defendant is to name the CT Page 11718 plaintiff as trustee for the benefit of the minor children for said life insurance proceeds. He is to present to the plaintiff annually, commencing September 1, 2000 and annually thereafter on September 1, proof that said insurance is in full force and effect and that there are no liens or loans on said policy that would reduce the amount ordered to be in effect.
E. BY WAY OF PROPERTY ORDERS
1. The defendant is to pay all of the liabilities shown on his financial affidavit and hold the plaintiff harmless. In addition, he is to pay the full amount of the Citibank/Advantage liability and hold the plaintiff harmless. The plaintiff is to cancel that credit card. In the event there were any charges on that credit card by the plaintiff from the date the trial ended to the date of this decision, then she is responsible for such charges. Further, in the event there are any charges by the plaintiff on her Fleet Bank credit card from the date the trial ended to the date of this decision, then she is responsible for such charges.
2. The Fidelity account shown on the plaintiff's financial affidavit with a balance of $7600 is awarded to the plaintiff.
3. The liability owed to Temple Beth Tikvah is to be paid for by the defendant and he is to hold the plaintiff harmless.
4. The defendant is to quitclaim to the plaintiff all of his right, title and interest in the family residence located at 1130 West Lake Avenue, Guilford, Connecticut, by September 30, 1999. The defendant is responsible for all of the monthly payments including the monthly payment that was to be paid in August, 1999. The monthly payment due for September, 1999 is to be paid by the plaintiff. The plaintiff is to hold the defendant harmless regarding the payments due on the mortgage.
5. All of the plaintiff's interest, if any, in the property located at 2477 Boston Post Road, Guilford, Connecticut, as well as in the defendant's veterinary practice are assigned to the defendant.
6. The plaintiff is to arrange to have the utilities at 1130 West Lake Avenue, Guilford, Connecticut, transferred into her name and she is to make the payments thereon. CT Page 11719
7. The pendente lite orders remain in effect through August 31, 1999.
8. The defendant is ordered to pay to the plaintiff as a property order the sum of $26,000 to be paid at the rate of $100 per week, without interest, commencing September 29, 1999 and weekly thereafter. In the event the defendant is more than thirty days late in any of his weekly payments, interest on the unpaid balance is to run at the rate of 8 percent.
9. All of the liabilities shown on Schedule C of the plaintiff's financial affidavit dated June 18, 1999, except for the liability to Citibank in the amount of $8187 are to be paid for by the plaintiff and she is to hold the defendant harmless.
10. All of the furnishings and personal effects in the possession of the defendant are awarded to the defendant as well as the Citizen's Bank checking account for Pet's Friend Animal Hospital.
11. All of the plaintiff's interest in the 1997 Hunter sailboat is awarded to the defendant. She is to execute whatever documents are required by September 29, 1999. The Key Bank debt on the boat is to be paid for by the defendant and he is to hold the plaintiff harmless.
12. All of the defendant's interest in the 1999 Mercury and 1998 Ford are awarded to the defendant. The defendant is to pay the loan balance on each vehicle and hold the plaintiff harmless.
13. All of the personal property and furnishings in the possession of the plaintiff are awarded to the plaintiff except for the defendant's clothing which he is to remove from the family residence by September 30, 1999. All of the personal property and furnishings in the possession of the defendant are awarded to the defendant.
14. The 1990 Geo shown on the plaintiff's affidavit is awarded to the plaintiff and she is to pay the loan balance and hold the defendant harmless therefrom.
F. BY WAY OF ATTORNEY'S FEES
1. No attorney's fees are awarded in favor of either party. CT Page 11720
G. MISCELLANEOUS ORDERS
1. Counsel for the plaintiff is to prepare the judgment file within thirty days and send it to counsel for the defendant for signature who shall send it to counsel for the minor children for signature and filing.
2. The parties are to exchange copies of their federal and state income tax returns for so long as there is an outstanding support order or any arrearage thereto.
3. The plaintiff is to cooperate with the defendant for him to obtain COBRA benefits under her employment with the total cost to be paid by the defendant.
Axelrod, J. CT Page 11721